CONNOR (SABIN v.). See Cases Nos. 12,196 and 12,197.

## Case No. 3,119.

### CONNOR v. SCOTT.

[4 Dill. 242;[1] 3 Cent. Law J. 305.]

Circuit Court, W. D. Arkansas. 1876.

REMOVAL OF CAUSES—PRACTICE—EFFECT OF FILING PETITION AND BOND.

1. To a bill filed in a state court to enforce a vendor's lien, the defendant set up a sale of the land in question to him, by the assignee in bankruptcy of one C., the maker of the notes constituting the lien, and filed his petition for the removal of the cause to the United States court: *Held,* that this involves the construction of the bankrupt law, and is therefore properly removable; and it does not alter the case that there are other questions of law to be settled, which depend on general principles, and not on the laws of congress.

2. The petition, under the act of 1875 [18 Stat. 470], is not required to be sworn to.

3. The mere filing of the petition and bond removes the cause ipso facto, if the cause is removable and the petition and bond are filed in due time and are in due form.

[Cited in Re Iowa & M. Const. Co., 10 Fed. 405.]

This is an action brought in the circuit court of the state of Arkansas, in Little River county, to enforce a vendor's lien upon land in the possession of defendant Scott, arising upon two notes, amounting to upwards of $20,000, executed by James M. Carr to Benjamin F. Ryburn, for the purchase money of the tract of land sued for. George S. Scott claims the land by virtue of a deed from John Wassell, assignee of James M. Carr in bankruptcy. On the 20.h day of July, 1875, the defendant Scott filed his petition in open court for the removal of the cause to the district court of the United States for the western district of Arkansas, on the grounds that his defence to said action arises under the laws of the United States, and by and through the force of the bankrupt law. This petition, on motion of plaintiffs' attorneys, was stricken from the files of the circuit court, and, on the 21st day

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

of July, 1875, the defendant filed his amended petition for removal to the federal court. On the 20th day of July, 1875, a bond was filed by defendant Scott, as is required by the act of congress of the 3d day of March, 1875. The plaintiffs, by their attorneys, filed a motion to strike out and remove from the files of the Little River circuit court this amended petition, for the following reasons: "Said pretended petition was not sworn to; that such pretended petition does not show sufficient grounds for such transfer; that the petition shows on its face that this is not a case falling within the act of congress; that said pretended petition is evasive, and does not clearly state any reasons for removing this cause without the jurisdiction of this court."

This motion was sustained, and the defendant Scott then obtained a transcript of the petition and answer filed in the above entitled cause, and filed the same in the district court for the western district of Arkansas, on the first day of the November term, 1875. Whereupon the plaintiffs, by their attorneys, appeared and filed their motion to strike from the docket this cause, for the following reasons: "That this court has no jurisd'ction herein. The pretended transfer of said cause has not been made according to law. The case was docketed herein without the order of any court; and the proceedings are irregular, informal, and without the authority of any law."

PARKER, District Judge. Two questions arise here. The first is, taking them in the order of these proceedings, did the defendant Scott comply with the requirements of the law of congress of the 3d day of March, 1875, in making his application for a removal of a cause from a state court to a federal court? And, second, does the court have jurisdiction of the cause after it gets here?

On the first question, I am of the opinion that the petition for the removal of the cause is in the form required by the act of congress of March 3d, 1875; that, under said act, it need not, in a case of this kind, be sworn to, and that the bond filed in the case is such a bond as is required by said act of congress. The petition and bond being such as are required by law, the mere filing of the petition and bond ipso facto removes the cause, and it is not necessary for the state court to act on the application. This view of the law, I think, is sustained in Osgood v. Chicago & V. R. Co. [Case No. 10,604]; First Nat. Bank of Manhattan v. King Wrought Iron Bridge Co. [Id. 4,803], decided by Mr. Justice Miller, and a decision of Mr. Circuit Judge McKernan, in the United States circuit court for the eastern district of Pennsylvania, all of which are reported in the Central Law Journal. The supreme court of Missouri, in the case of Herryford v. Aetna Ins. Co., 42 Mo. 151–153, say that "when a party makes an application for a removal of the cause in the manner required by the act of congress, it is error in the state court to proceed further in the matter, and any subsequent step is coram non judice." Mr. Circuit Judge Johnston, while sitting in the circuit court for the southern district of New York, in the case of Merchants' & Manuf'rs Nat. Bank v. Wheeler [Case No. 9,439], held that the rule was well settled that the application, if sufficient by law, is effectual to remove the cause, however it may be disposed of by the state court.

I am of the opinion, on the first point in the case, that the defendant Scott complied with the law of congress in making his application for removal of the cause from a state to a federal court; and the state court, when the petition and bond were filed, should have gone no further, but should have ordered the clerk to send a transcript of the case to the federal court, leaving to that tribunal the decision of the question as to whether it was such a case as, under the laws of the United States, was within the jurisdiction of the federal courts.

The next question is, does this court have jurisdiction of this action? • The field of jurisdiction is a wide one, and one in which there are frequently to be found many difficulties in the way of a correct solution of the question.

The question involves the relative powers of the two systems of courts, which are a part of our duplex system of government. The source of jurisdiction in the federal courts is the second section of the third article of the constitution of the United States. Jurisdiction is given to the courts of the Union in two classes of cases. In the first, their jurisdiction depends on the character of the cause; in the second, the jurisdiction depends entirely on the character of the parties.

The first class comprehends all cases in law and equity, arising under the constitution, the laws of the United States, and treaties made, or which shall be made, under their authority. This is the language of the constitution. It will be observed that the part of the second section of the act of congress of the 3d of March, 1875, which provides for the removal of a certain class of causes, dependent upon the subject matter of the same, is identical in meaning with the clause of the second section of the third article of the constitution, which gives jurisdiction to federal courts over a certain class of cases, dependent upon their subject matter. Then, if this part of the constitution has received a construction, it may be used as a correct rule of interpretation, and applied to the second section of the removal act.

This section goes further than any act of removal heretofore passed has done. It goes as far as it can go and keep within the purview of the constitution. It provides that the courts created by the constitution of the United States shall have jurisdiction of any

case which, under that constitution, might be brought in the federal courts, although such case may regularly be commenced in the court of a state, provided either party to the suit desires to avail himself of the constitutional privilege of trying his case in the federal court.

What is meant by a suit of a civil nature, at law or in equity, arising under the constitution or laws of the United States? A case is a suit in law or equity, instituted according to a regular course of judicial proceedings. If a case is a suit then a suit is a case, and the meaning of the second section of the third article of the constitution, and the second section of the removal act, is the same, and when such case or suit involves any question arising under the constitution, treaties, or laws of the United States, it is within the judicial power committed to the courts of the Union. Marshall's Speech, 5 Wheat. [18 U. S.] Append. 16, 17; Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 819; 1 Tuck. Bl. Comm. 418–420; Madison's Virginia Resolutions and Report, Jan., 1800, p. 28; Marbury v. Madison, 1 Cranch [5 U. S.] 137, 173, 174; Owing v. Norwood, 5 Cranch [9 U. S.] 344; 2 Elliott's Debates, 418, 419; Martin v. Hunter, 1 Wheat. [14 U. S.] 304; Cohens v. Virginia, 6 Wheat. [19 U. S.] 264, 378, 392; Story, Const. §§ 1647, 1656. A suit or case consists of the right of one party, as well as the other. Cohens v. Virginia, 6 Wheat. [19 U. S.] 379.

Chief Justice Marshall, in the case of Cohens v. Virginia, 6 Wheat. [19 U. S.] 379, said a case arises, under the constitution or laws of the United States, whenever its correct decision depends on the construction of either, or when it involves any question arising under the constitution, treaties, or laws of the United States.

If, therefore, it be true that the second section of the removal act is co-extensive with the judicial power of the federal government, as to the class of cases therein specified, whenever a case is brought in a state court where the matter in dispute exceeds five hundred dollars, exclusive of costs, the correct decision of which depends on the construction of either the constitution or a law of congress, or where it involves any question arising under the constitution, treaties, or laws of congress, the same can be removed to a federal court, provided the machinery for the removal, as prescribed in the act of the 3d of March, 1875, is properly set in motion.

It matters not that other questions may arise in the case, which depend on the general principles of the law, and not on the laws of congress. Chief Justice Marshall, in Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 256, says: "If this were sufficient to withdraw a case from the jurisdiction of the federal courts, almost every case involving the construction of a law would be withdrawn, and a clause in the constitution relating to a subject of vital importance to the government, and expressed in the most comprehensive terms, would be construed to mean almost nothing. There is scarcely any case every part of which depends on the constitution, laws, or treaties of the United States." Further on, in the same case, he says: "We think, then, that when a question to which the judicial power of the courts of the Union is extended by the constitution forms an ingredient in the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it."

Does the correct decision of this case depend on the construction of a law of congress? Or does the case involve any question arising under a law of the United States?

The plaintiffs state in their petition, among other things, that defendant Carr, in the year 1868, upon his own application, was declared a bankrupt by the district court for the eastern district of Arkansas, and that the lands in controversy were set out in his schedule of assets filed by him as charged with the encumbrance of the two notes mentioned in the petition; that said lands were, by the order of said court, sold by Wassell, the assignee, to defendant Scott, subject to the lien of the two notes. The answer of said Scott admits the bankruptcy of Carr, the sale of the lands by the assignee mentioned in the petition, and the purchase by himself of said lands at the sale, but denies that he purchased said lands subject to any lien arising out of two promissory notes held by Connor and Hawkins; that Carr obtained a full and complete discharge from all his debts and liabilities; that said notes were not a lien upon said lands, and that they were not proven up against the estate of Carr.

Suppose these notes were an equitable lien upon the land named, how are we to ascertain the effect of Carr's bankruptcy upon this lien but by a construction of the bankrupt law? If it was a lien, should it be proved up as other claims? Or, could the holders of the notes stand aloof and enforce their lien at pleasure? We must look to the bankrupt law to determine this. Does not this involve a question arising under this law of congress? Or, suppose that the vendor's lien has been lost by the assignment of these notes—that they were scheduled as a part of the debts of Carr, and that their owners failed to prove them up against the estate of Carr—how are we to ascertain what effect this had as to these notes but by a reference to the bankrupt law? Or, suppose they were proved as debts against the estate without their having behind them a vendor's lien, and Carr received a complete discharge from all his liabilities, how can we tell how this would affect the rights of the holders of these notes, and the purchaser of this land, but by going to the bankrupt law? That law

points out plainly the status of legal and equitable liens against the property of a bankrupt. How can we tell whether a secured creditor must prove his demand, but by a construction of the bankrupt law? How can we tell whether he can stand by and not prove his debt, but wait until bankruptcy proceedings are closed, and then enforce his lien in a state court, except by reference to the law of bankruptcy? Is a vendor's lien preserved in bankruptcy? How do we know whether it is or not? By simply construing the bankrupt law. Is it ever forfeited? If so, what will work a forfeiture? How do we know the answers to these questions? By going to the bankrupt law. Does the assignee ever sell free from the lien, or does he always sell subject to the same? How are we to know, but by a construction of this law of the United States? Can the holder of a lien enforce it after discharge? If so, how? Can any one answer without placing a construction on the bankrupt act?

These are questions that come up in this case. Their correct decision depends on the construction of a law of congress. If they do come up in this case, then it is a suit which involves questions arising under a law of the United States and dependent for their settlement on a construction of that law, and, therefore, within the judicial power confided to the courts of the Union.

I cannot pass this case without making a remark as to the delicate position in which a judge of the federal court is placed when called on to settle a question of jurisdiction arising between his own court and the court of a state, especially when that question has been passed on by the judge of that court. Yet, with due deference to the judge of the state court, and with high regard for his opinions, I adopt the language of Chief Justice Marshall, in Cohens v. Virginia [supra], while speaking with reference to the jurisdiction of the supreme court: "It is most true that this court will not take jurisdiction if it should not, but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution; we cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties a case may be attended, we must decide it if it be brought before us; we have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given; the one or the other would be treason to the constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment and conscientiously perform our duty."

In doing this in this case, I find this court having jurisdiction; the motion to strike the case from the docket will, therefore, be overruled.

Motion denied.