[Civ. No. 4381.   Second Appellate District, Division One.—December 5, 1923.]

In the Matter of the Estate of A. A. PATTERSON, Deceased.

[1] WILLS—HUSBAND AND WIFE—PROPERTY SETTLEMENT—DIVORCE—REVOCATION—ESTOPPEL.—Where husband and wife make concurrent wills, each in favor of the other, and thereafter they effect a settlement of their property rights and, in a subsequent divorce proceeding in which a decree is rendered in favor of the wife, such settlement is confirmed and adopted by the court as being in full of all claims of each against the other, and the divorced wife then destroys her will, the will of the divorced husband is not thereby revoked, and the divorced wife is not estopped from probating or claiming under said will.

[2] ID.—REMOVAL TO THIS STATE—CONFLICT OF LAWS.—The will of the divorced husband, executed in a sister state, was not revoked, as to property in this state, by virtue of the provision of the law of such sister state that "a divorce subsequent to the making of a will shall revoke the will as to the divorced spouse," where, following the entry of the divorce decree in favor of the wife, he converted all his property into money and removed to this state and he continued a resident of this state until his death.

[3] ID.—LEX DOMICILII—CONSTITUTIONAL LAW.—Conceding that, if the divorced husband had died in such sister state leaving all his property therein his will would have been revoked by virtue of the laws of that state, the "full faith and credit" clause of the United States constitution does not require that the courts of this state, in determining the validity of the will, shall be controlled by the laws of such sister state, where such divorced husband died a resident of this state, leaving property herein.

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate. James C. Rives, Judge. Affirmed.

1. Settlement of property rights between husband and wife in action for divorce as implied revocation of will, note, 20 L. R. A. (N. S.) 1073.

Divorce as affecting will previously executed by husband or wife, notes, 3 Ann. Cas. 230; 16 Ann. Cas. 544; 25 A. L. R. 49.

3. Probate of will in another state, notes, 48 L. R. A. 130; 2 L. R. A. (N. S.) 408.

The facts are stated in the opinion of the court.

Morris & Shipley, Yakey & Devin and Arthur W. Thompson for Appellants.

Fredericks & Hanna for Respondent.

HOUSER, J.—The facts herein appear to be as follows: That on the eleventh day of April, 1916, at Seattle, in the state of Washington, the deceased, A. A. Patterson, executed his will in favor of his wife, Martha Isabelle Patterson, and at the same time and place Martha Isabelle Patterson executed her will in favor of her husband; that on March 9, 1920, a decree of divorce was rendered in favor of Martha Isabelle Patterson and against A. A. Patterson by a court of record and of general jurisdiction in the state of Washington, which said court had jurisdiction of the parties and the subject matter; that prior to the rendition of a decree in said divorce action the parties effected a settlement of their property rights, which settlement was confirmed and adopted by the said court as being in full of all claims of plaintiff and defendant each against the other; that a division of all the property of the parties was made in accordance with said property settlement, and thereafter the deceased, A. A. Patterson, converted all his personal property into money and removed to Los Angeles, California, where he died on November 6, 1921; that the divorced wife, Martha Isabelle Patterson, following said divorce and prior to the death of her divorced husband, destroyed her will which had theretofore been executed in favor of her former husband; that on the death of said A. A. Patterson his former wife, Martha Isabelle Patterson, offered for probate the will of A. A. Patterson which had theretofore been executed by him in the state of Washington and which will was found among the personal effects of the deceased. A contest and objections to the probating of said will were duly filed by the brothers and sisters of the deceased.

From an order admitting the will to probate and directing the issuance of letters testamentary therein and appointing the proponent thereof, Martha Isabelle Patterson, as executrix thereof, this appeal is prosecuted.

On the trial of the issues in the lower court, the decree of divorce, certain statutes of the state of Washington and certain decisions by the supreme court of that state were introduced in evidence. The statutes were as follows: (a) "If, after making any will, the testator shall marry and the wife, or husband, shall be living at the time of the death of the testator such will shall be deemed revoked, unless provision shall have been made for such survivor by marriage settlement, or unless such survivor be provided for in the will or in such way as mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of revocation shall be received. A divorce subsequent to the making of a will shall revoke the will as to the divorced spouse." (b) "Whenever judgment of divorce from the bonds of matrimony is granted by the courts of this state, the court shall order a full and complete dissolution of the marriage as to both parties." The decisions by the supreme court were: *Schirmer* v. *Schirmer,* 84 Wash. 1 [145 Pac. 981]; *Hilleware* v. *Hilleware,* 92 Wash. 99 [158 Pac. 999]; *McDonall* v. *McDonall,* 95 Wash. 553 [164 Pac. 204]; and which decisions are to the effect, among other statements of rules of law, that "if a decree of divorce is granted in favor of one of the spouses both are thereby necessarily divorced."

[1] The first contention on the part of appellants is that the execution of the concurrent wills of A. A. Patterson and Martha Isabelle Patterson, the settlement by them of their respective property rights, the subsequent divorce and the destruction by Martha Isabelle Patterson of her will in favor of deceased, A. A. Patterson, constitute a revocation of the will here in question and an estoppel against Martha Isabelle Patterson from probating or claiming under the will of her divorced husband, A. A. Patterson.

While it must be conceded that some of the cases, notably *Lansing* v. *Haynes,* 95 Mich. 16 [35 Am. St. Rep. 545, 54 N. W. 699], and *In re Hall's Estate,* 106 Minn. 502 [130 Am. St. Rep. 621, 16 Ann. Cas. 541, 20 L. R. A. (N. S.) 1073, 119 N. W. 219], support the claim by counsel for appellants, certain other authorities, such as *Baacke* v. *Baacke,* 50 Neb. 19 [69 N. W. 303]; *In re Brown's Estate,* 139 Iowa, 219 [117 N. W. 260], *Cunningham's Succession,*

142 La. 701 [77 South. 506], hold to the contrary. As is adverted to in the case last cited, the conclusion for which appellants contend and in which they are upheld in the cases to which reference has been made depends entirely upon a common-law doctrine, which principle has been expressly repudiated in this state in the case of *In re Comassi*, 107 Cal. 4 [28 L. R. A. 14, 40 Pac. 16], where it is said that " 'the Civil Code establishes the law of this state upon the subjects to which it relates' (Civ. Code, sec. 4); and, in order to determine whether a will has been properly executed or revoked, or whether after its execution there has been such a change in the status of personal relations of the testator as in law will effect its revocation, we have only to determine whether, in the one case, there has been a compliance with the requirements of the statute, or, in the other case, whether the changed condition of the testator is within the conditions named in the statute.'' The several sections of the Civil Code (secs. 1292, 1299, 1300, 1300a, 1304) which relate to and provide for the means by or through which revocation of a will may be effected contain no reference whatsoever to a divorce either as affecting a will or otherwise. Inasmuch as the rule is that ''the Civil Code establishes the law of this state upon the subjects to which it relates'' (sec. 4, Civ. Code), and because of the fact that no provision is found therein which will warrant a revocation of the will in question arising out of the theory that the circumstances of the testator were so changed after his will was executed, by reason of the divorce or otherwise, as would raise the presumption that the testator intended a revocation, we conclude that the circumstances to which we have referred did not operate as a revocation of the will and that the proponent was not estopped from either probating the will or from claiming as a legatee or devisee thereunder.

[2] Appellant's next contention is that by virtue of that portion of the Washington statute which provides that ''a divorce subsequent to the making of a will shall revoke the will as to the divorced spouse,'' the effect of the decree of divorce between the testator and his wife was that the will of A. A. Patterson was immediately revoked. The authorities cited by appellants in support of the principle for which they contend are to the effect that, under

the provisions of certain statutes concerning the marriage of the testator or the birth of a child to the testator following the execution of the will, the will is thereby revoked. The statutory rule to which appellants refer appears to be common to many different jurisdictions; and where the question of revocation has arisen under such a statute and in the state where the statute was enacted, the decision of the courts thereunder seems to be quite uniform in accordance with counsel's contention. Those cases, however, were all decided in the same jurisdictions in which the statute was enacted and in which the testator was deceased. The facts of the instant case, though somewhat similar to many of the facts in some of the cases cited, differ largely therefrom in that the question of revocation here depends upon the residence of the testator at the time of his decease within the state of California, while the revocatory statute was enacted by the legislature of the state of Washington. Similar questions have been decided by courts of many different jurisdictions. They have generally arisen from a consideration of statutes which have provided for the revocation of wills by reason of the marriage of the testator or by reason of the birth of a child to the testator after the execution of the will, and by the great weight of authority the conclusion is reached that the law of the domicile of the testator at the time of his death controls the situation, especially as to personal property. Mr. Schouler in his work on Wills, Executors and Administrators (5th ed., vol. 2, p. 889) lays down the rule that "the law of the place of last domicile regulates as to the execution and validity of wills of personal property." And Mr. Alexander in his Commentaries on Wills (vol. 1, p. 338) says that "the general rule, except as modified or changed by statute, is that a will disposing of personal property is governed, as to the formal requisites essential to its validity and as to its construction, by the law in force at the place of domicile of the testator at the time of his death." In Wharton on the Conflict of Laws (3d ed., vol. 2, p. 1351) is found the statement that "the question whether the marriage of the testatrix, or the birth of a child subsequently to the execution of the will, revokes the same, depends upon the *lex domicilii* so far as personal property is concerned, and upon the *lex rei sitae* so far as

real property is concerned." And as announcing the same principle, see the following cases: *Miles* v. *Fogle,* 4 Edw. Ch. (N. Y.) 559; *In re Coburn's Will,* 9 Misc. Rep. 437 [30 N. Y. Supp. 383]; *Evansville I. & C. S. Co.* v. *Winsor,* 148 Ind. 682 [48 N. E. 592]; *Van Wickle* v. *Van Wickle,* 59 N. J. Eq. 317 [44 Atl. 877]; *Ware* v. *Wisner,* 50 Fed. 310; *Kingsbury* v. *Burnside,* 58 Ill. 310 [11 Am. Rep. 67]; *Eyre* v. *Storer,* 37 N. H. 115; *In re Harwood,* 172 N. Y. Supp. 296; *Crandall* v. *Barker,* 8 N. D. 263 [78 N. W. 347]; *In re Witter's Estate,* 15 N. Y. Supp. 133; *Moultrie* v. *Hunt,* 23 N. Y. 394; *Despard* v. *Churchill,* 53 N. Y. 192; *Lowndes* v. *Cooch,* 89 Md. 478 [40 L. R. A. 380, 39 Atl. 1045]; *Lewis* v. *Corbin,* 195 Mass. 520 [122 Am. St. Rep. 261, 81 N. E. 248]; *Martin* v. *Stovall,* 103 Tenn. 1 [48 L. R. A. 130, 52 S. W. 296]; *McEwan* v. *Brown,* 176 N. C. 249, [97 S. E. 20].

[3] Appellants also urge that because of the so-called "full faith and credit" clause of the United States constitution (art. IV, sec. 1), the Washington statute, as well as the decree of divorce by a court of general jurisdiction and the several decisions by the court of last resort, to all of which attention has already been directed, should be accorded their full force and effect and therefore be controlling upon the courts of this state in determining the question of the validity of the will. While we recognize generally the soundness of such rule, we fail to see its application to the facts of this case. Assuming (without deciding) that under the laws of the state of Washington, had the testator died in that state leaving all his property therein, the will executed by him would have been revoked, it does not follow that in the circumstance of his death in the state of California, where he left personal property, the same rule should prevail. The courts of this state had and have jurisdiction, and, in accordance with the authorities heretofore cited, should determine the case in conformity with its own laws governing the matter. Had the Washington courts jurisdiction of the question herein involved and had such courts rendered a judgment thereon, then in any subsequent action in this state involving such judgment it might well be claimed that the California courts would be bound by the "full faith and credit" clause of the United States constitution. But no

such condition, nor one analogous thereto, is here pre-
sented. A divorce decree was rendered between the tes-
tator and the proponent of his will; the state of Washing-
ton has simply enacted a statute affecting the status of the
will under such circumstances; and certain detached and
unrelated decisions by the court of last resort interpret the
meaning of certain words which are found within that stat-
ute. Nowhere in such decisions is there any attempt on
the part of the court to determine the direct question here
involved; and, considering the facts, the effect of the stat-
ute is necessarily limited territorially to the boundaries of
the state of Washington. Surely the statute of the state
of Washington providing that "a divorce subsequent to the
making of a will shall revoke the will as to the divorced
spouse" possesses no greater strength than statutes of other
states which in substance declare that a marriage of the tes-
tator subsequent to the making of a will shall revoke the
will; or that the birth of a child to the testator after
the execution of the will shall have the same effect; and the
textwriters and the authorities generally, heretofore cited,
are clear in their expression that statutes of the latter class
will not prevail as against a rule that as to personal prop-
erty a will must stand or fall in accordance with the law of
the domicile of the testator at the time of his decease.

As has been heretofore adverted to, the several judgments
rendered by the courts of last resort of the state of Wash-
ington, and which are specially relied upon to establish the
"full faith and credit" contention of appellants, were in
no way connected with the issues involved in this contro-
versy. Their facts were in nowise, even remotely, related
to the facts of this case, nor were their parties, nor their
privies, nor their assigns. Those judgments are here en-
titled to no more than the same faith and the same credit
and the same respect that they would receive in their home
state. If the issues before this court were issues before a
court in the state of Washington, while the decisions here
pleaded and introduced in evidence would be entitled to
great consideration, they would not necessarily be conclu-
sive; indeed, the supreme court would have the power and
the right to absolutely disregard them. The constitutional
provision to which reference has been made "does not re-
quire that judgments in one state shall be followed by the

courts of other states as matters of authority in other similar cases. The constitution does not deal with the question of the effect of such judgments as precedents, nor with the opinion of the court rendering them. . . . The duty of the courts of one state to follow those of another, upon questions arising upon the construction of the statutes of the latter, is a duty resting alone upon comity, and not one imposed by the federal Constitution.'' (*Wiggins' Ferry Co.* v. *Chicago & A. R. Co.,* 11 Fed. 381.)

From the views which we have expressed herein it follows that the order from which the appeal is taken should be affirmed. It is so ordered.

Curtis, J., concurred.

CONREY, P. J., Concurring.—I concur in the judgment. As pointed out in the foregoing opinion, the Washington statute provides that ''a divorce subsequent to the making of a will shall revoke the will *as to the divorced spouse.*'' I think that this provision of the statute should be construed so as to give some meaning to the phrase ''as to the divorced spouse.'' If appellants' contention be correct, the phrase has no meaning at all. It seems clear that the legislature intended that a party against whom a divorce had been granted for his or her misconduct should not be permitted to profit by the terms of a will made during the period of the marriage by the innocent spouse in whose favor the divorce was granted. While some Washington decisions hold, as well they might, that when a decree of divorce has been entered both parties are divorced, yet I do not understand that any of those decisions referred to or in any way involved the construction of the provision of the statute above quoted.

Upon the other questions discussed in the foregoing opinion I am in accord therewith.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 31, 1924.

All the Justices concurred.